**John H. DUNMAR, Cadet, Plaintiff,**

v.

**Stephen AILES, Secretary of the Army, Defendant.**

**Civ. A. No. 1150–64.**

United States District Court
District of Columbia.

May 28, 1964.

Paul R. Connolly and James E. Murray, Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., Charles T. Duncan, and Joseph M. Hannon, Asst. U. S. Attys., Washington, D. C., for defendant.

4. See United States v. Glaze, 313 F.2d 757, 761 (2d Cir. 1963). See also, 34 F.R.D. 155, 162–64 (1964).

CURRAN, District Judge.

Plaintiff, John H. Dunmar, is a member of the Corps of Cadets of the United States Military Academy. On February 27, 1964, the Cadet Honor Committee recommended to the Commandant of Cadets that plaintiff be separated from the Corps of Cadets for violating the Cadet Honor Code "in that he quibbled by intentionally deceiving several people in an attempt to gain credit for a confinement".

On the same date, the Commandant of Cadets explained to Cadet Dunmar that he had the option of resigning from the Academy or of appearing before a board of officers convened to hear the case and make appropriate recommendations to the Superintendent of the United States Military Academy. On March 4, Cadet Dunmar reported that he desired to have a board of officers hear his case.

On March 10, 1964, a board of officers was called to investigate the matter and make recommendations to the Superintendent of the United States Military Academy concerning the allegations that the plaintiff had violated the Cadet Honor Code. A full hearing was had, in which the plaintiff was represented by counsel, had the opportunity to testify, to cross examine all witnesses, and to call witnesses of his own choosing. The Board made the following majority finding:

"The Board finds that Cadet John H. Dunmar, Company M-2, United States Corps of Cadets, West Point, New York, did at West Point, New York, on 12 February 1964, violate the Cadet Honor Code by quibbling by intentionally deceiving Captain Donald E. Dillon in an attempt to gain credit for a confinement."

The Board recommended "that the case be referred to the Academic Board for action under the provision of Paragraph 9.09, Regulations, United States Military Academy".

The circumstances giving rise to this case are largely undisputed. Cadet Dunmar entered the hospital on Sunday, February 9, 1964, with a streptococcus infection of the throat. He desired to go on an extracurricula outing with the ski group on the approaching weekend of February 14-15. He had one more confinement to sit off before he would be eligible to make the trip. The last possible day he could sit his confinement and still go on the trip was Wednesday afternoon, February 12.

According to the exhibits in this case, on Wednesday morning, February 12, Cadet Dunmar inquired of Dr. Leonard whether he could be released from the hospital in order to sit his confinement that afternoon. Dr. Leonard replied that a confinement could not be sat while in the hospital, and that one could not be released for the express purpose of sitting a confinement. Cadet Dunmar then asked if he could be released completely from the hospital in time to sit his confinement that afternoon. Dr. Leonard replied that further tests had to be made and that it was unlikely that Cadet Dunmar could be released from the hospital that day. Cadet Dunmar had hoped to gain credit for having sat his confinement that day.

That afternoon Dr. Dillon came into Cadet Dunmar's ward on rounds. Cadet Dunmar asked if he could return to his barracks room to pick up his books, so that he could prepare for class the next day. Dr. Dillon smiled and replied something to the effect of, "What is the real reason, Mr. Dunmar?" Dr. Dillon testified that he also remembered asking Cadet Dunmar to reassure him whether the real reason was that he wanted to go back to get his books. Cadet Dunmar at no time informed Dr. Dillon that he wanted to gain credit for sitting a confinement. Cadet Dunmar stated that he asked Dr. Dillon for permission to go back to his room to get his books and mail and hoping to be in the room at the time of the confinement inspection. Dr. Dillon also testified that although Cadet Dunmar might have had other reasons, and, "I had reason to believe that he did, * * * I had not sought to make him exactly tell me what he was going to do * * *". Cadet Dunmar went to his

barracks room and was gone for about twenty minutes. During this interval, the CCQ opened Cadet Dunmar's door, observed him in the room, and immediately left. Cadet Dunmar received credit for this confinement because the CCQ had observed him to be in his room at the time of the confinement inspection. Cadet Dunmar returned to the hospital and did bring some books with him. That evening he called his company executive officer, Cadet Hudgins, and asked whether he had been credited with the confinement that afternoon and was advised that he had been so credited. Cadet Dunmar asked Cadet Hudgins to send him an extracurricula leave blank, and Cadet Hudgins did so.

Cadet Dunmar's company tactical officer, Major Rickard, had occasion to see the leave request form and noted that Cadet Dunmar had received credit for a confinement while he still had not been discharged from the hospital. It was at this point that the investigation commenced.

Quibbling has been defined in several ways. Cadet Manning states:

"If you mislead someone intentionally by answering questions or making statements in an equivocal manner, you are quibbling and for all practical purposes telling a lie".

According to Cadet Culp, Chairman of the Cadet Honor Committee,

"Quibbling is the intentional intent to lead someone to a wrong conclusion".

The matter was considered by the Academic Board, and on April 4, 1964, that Board concluded that plaintiff—

"has exhibited habits or traits of character which render his retention at the Academy undesirable and which make his receiving a commission in the United States Armed Services undesirable; and, therefore, in accordance with Para. 9.09, USMA Regulations, the Academic Board recommends that Cadet Dunmar be separated from the United States Corps of Cadets, United Stat-

es Military Academy, West Point, New York."

When the report of the Academic Board was reviewed in Washington, it was learned that the Staff Judge Advocate General at the Academy had prepared a report on the proceedings before the Board of Officers and had been a member of the Academic Board. The matter was remanded to the Academic Board with directions that the Staff Judge Advocate General be excused, as well as any member who felt he could not impartially consider the case. The Academic Board then reconsidered Cadet Dunmar's case and concluded that he had displayed traits of character which rendered his retention at the Academy undesirable. His case was then considered by the Secretary of the Army, and on May 11, 1964, the Secretary issued an order separating Cadet Dunmar from the United States Corps of Cadets. This order was served on Cadet Dunmar by Major Richardson on May 13, 1964.

Suit was filed by the plaintiff against the Secretary of the Army on May 15, 1964, alleging a deprivation of plaintiff's rights to constitutional and administrative due process. This court has jurisdiction. See Harmon v. Brucker, 355 U.S. 579, 581–582, 78 S.Ct. 433, 2 L.Ed.2d 503. At 11:35 A.M., on May 15, this court issued a temporary restraining order against the Secretary of the Army to reinstate plaintiff as a member of the Corps of Cadets. By "reinstate", this court did not intend to reinstate a cadet who had already been separated. What the court meant by "reinstate" was that no further steps were to be taken with respect to effectuating his dismissal from the United States Military Academy until plaintiff's rights were adjudicated. On May 18, 1964, the defendant filed a motion to dissolve the temporary restraining order on the ground that the effective date of the plaintiff's dismissal was May 13th. After hearing the defendant's witnesses and examining the exhibits, plaintiff not having completed all necessary clearance procedures, the Court finds that the ef-

fective separation date was 5:00 P.M., May 15, 1964. On May 14th and 15th, not only was the plaintiff allowed to wear his uniform, but he was under military control.

At the end of the argument on the motion to dissolve the temporary restraining order, the defendant did not request a ruling on what the court found to be the effective separation date but decided to argue the merits and have the court treat the matter as the motion for a preliminary injunction. The matter was continued until the following Monday.

■ In its resolution of May 5, 1964, the Academic Board stated, among other things,

"In particular the Board finds that Cadet Dunmar engaged in a planned deception of Captain Dillon, the Cadet in Charge of Quarters, his company first sergeant and his company tactical officer".

In this regard, it should be noted that the Board of Officers found only that Cadet Dunmar had intentionally deceived Dr. Dillon. No finding was made as to deceiving Cadet Salander, Cadet Hudgins or Major Rickard. Because the Board of Officers found only that Cadet Dunmar had intentionally deceived Dr. Dillon, the Board of Officers made no findings that Cadet Dunmar had intentionally deceived Cadet Salander, Cadet Hudgins, and Major Rickard. This being so, the Academic Board had no right to add these three findings. Therefore, in so far as these findings are concerned, they are a nullity, as Cadet Dunmar was not accorded procedural due process.

■■ In so far as the Board of Officers found that Cadet Dunmar violated the Cadet Honor Code by quibbling with intent to deceive Dr. Dillon, this Court finds that Cadet Dunmar was accorded procedural due process. It is evident, from the exhibits and the record in this case, that the evidence against Cadet Dunmar that he was guilty of quibbling with an intent to deceive Dr. Dillon is, at most, very weak, but the Board of Officers found it to be sufficient, as did the Academic Board after reviewing the findings of the Board of Officers. Whatever feeling this Court may have as to whether Cadet Dunmar violated the Cadet Honor Code by quibbling with an intent to deceive Dr. Dillon is of no moment, as this Court cannot substitute its judgment for the judgment of the authorities at the Military Academy. Courts cannot command or regulate the Army or the West Point Military Academy, and if the authorities at West Point accorded to Cadet Dunmar procedural due process, that is all he is entitled to. The Secretary of the Army has the power to separate a cadet from the Corps of Cadets at the Academy for cause.

In view of the fact that the Board of Officers found only that Cadet Dunmar violated the Cadet Honor Code by quibbling, by intentionally deceiving Dr. Dillon in an attempt to gain credit for a confinement, and further in view of the fact that this matter concerns fair treatment by the Department of the Army of its own personnel, and that a dismissal of a four-year student two weeks prior to graduation seems to be an action of such serious nature for the alleged violation of the Honor Code, it might well be that the Secretary of the Army, under these circumstances, might desire to review this case again. Of course, this is entirely within the discretion of the Secretary.

The findings and conclusions having been stated in this opinion, no formal findings of fact and conclusions of law are necessary.

The motion for the preliminary injunction is denied, and the extended temporary restraining order is dissolved. Counsel for the defendant will prepare the appropriate order.